Good morning, Madam Clerk. Please call the first case for argument. First case for oral argument is 20-3447, Western District of Missouri, Stephanie Gasca et al. v. Anne Precythe et al. All right, Mr. Rosetti, we'll hear from you first. Good morning, Your Honors, and may it please the Court. Jesus Rosetti, Deputy Solicitor General for the State of Missouri. The defendants acknowledged that the policies challenged in the operative complaint fell short of the minimum due process requirements established on Gagnon and Scarpelli Gagnon and Morris, excuse me. So they took good faith corrective measures to revise these policies and provide plaintiffs the remedy that they sought. Defendants sought a modest stay to this litigation, a request plaintiffs consented to, in order to implement the new policies. But the district court forged ahead, granted summary judgment, and held a two-day evidentiary hearing over the adequacy of policies not challenged in the operative complaint. It also authored a 50-plus page opinion that effectively wrote a code of procedure for the State of Missouri, a task that even the Supreme Court of the United States and Morrissey recognized it could not do, and for good reason. As this court recently said in Ahmaud v. City of St. Louis, the days of federal courts' management over government functions is over. The district court's judgment should be reversed for at least three reasons. First, the district court's remedy was unnecessary. Defendants had provided plaintiffs with relief by replacing the old policies challenged in the operative complaint with new policies that satisfied the minimum due process requirements in Gagnon and Morrissey. The district court reached the conclusion that many of these new written policies, in fact, satisfied due process. To the extent plaintiffs believed that the new policies did not go far enough, they could have amended their complaint and challenged those new policies. Counsel, doesn't the record show that the policies were not being implemented or not being followed? Certainly, Your Honor. At the evidentiary hearing that was held on these new policies, the district court reached those conclusions. And what's our level of deference for those conclusions? Certainly, with respect to any factual findings that underlie those conclusions, it would be a clearer review, Your Honor. So the remedy itself would be reviewed for abuse of discretion, but any sort of underlying legal conclusions that support any of those findings, any of those conclusions by the district court would be reviewed de novo. So what's the import of those findings? There may be policies that have been implemented, but they're not being followed, and that's a plain error review. Where does that leave us on appeal? Well, first I would recognize, just to start off, first, Your Honor, I would first submit that anything that the district court did after we started revising these policies and went ahead and held a two-day evidentiary hearing about these new policies, we don't believe the district court should have done that because, at the very least, we believe that we have provided the plaintiffs with a nonjudicial remedy by revising these policies. And if they had any problems with the adequacy of those policies, the course that should have been chosen, in our view, was not to grant summary judgment and have an evidentiary hearing about those policies. Rather, it was just a completely different case for them to actually challenge those new policies to the extent that they had a problem with them. Now, with respect to what the district court found in terms of them not being applied consistently or whatnot, I'd have two responses. First, we believe and argue that they are being applied consistently and put evidence to that effect to preserve our objections over the entire process. But then, secondly, I think in Walter v. Dawson, this court consistently said that for purposes of 1983, failure to adhere to your own internal policies, while depending on the gravity of the situation, could, in fact, be a constitutional violation. In this context, we believe it is not because, again, for the most part, these policies, the district court found that they were, in fact, adequate. They satisfied due process. And if there was any inconsistency, the course that should have been chosen is not to issue the overbroad remedy that the district court issued in this case. Rather, it's to say, we have an opportunity to make sure that these defendants, these parolees, perhaps can get relief through these new policies. And there's simply no 1983 violation, in our view, by failure to adhere to those policies. That's how we read Walter v. Dawson, at the very least. Can I ask one more quick question, then I'll let you continue? You referred to the practices or procedures that were challenged in the operative complaint. What is your view of the complaint here? I mean, what practices were challenged here, in total? Is it the timing of the hearings? Is it the notice? Is it the counsel? I mean, in your view, how broad was the complaint here? Well, as I understand it, Your Honor, really, and this is a single count complaint in the operative complaint of JA-62. And so you have, they allege in their operative complaint that we were not screening for counsel, the need for counsel under Gagnon. They allege that we were not appointing counsel pursuant to Gagnon after screening for counsel. They allege that we were not giving notice to these individuals of the violations at issue, providing an adequate opportunity to cross-examine individuals, the evidence against them to be used before the revocation decision is held. Those are really the series of violations, if you will, that were alleged in the operative complaint. From our standpoint, Your Honor, again, if you go back to JA-1203, which is where we filed our response, saying that we are undertaking substantial corrective measures that, again, we admitted were not up to par with Gagnon and Morrissey. We completely and substantially redid our entire process. As the plaintiffs in this case can see or recognize, at least in footnote 2 of their brief, these were substantial changes to the entire process, providing a screening instrument, notice of rights, hearings, actually giving them a revocation report where that details what the charges are against them so they have fair notice before they actually go through the revocation decision. It was a very substantial process. So in our view, the entire complaint is premised on these older policies that we readily acknowledge were not living up to Morrissey and Gagnon, and we believe that these good-faith corrective measures that, if you go back to Volume 13C of Wright and Miller, Section 3553.10.1, says that defendants can take these kind of good-faith corrective measures, surrender the fight, and take these good-faith corrective measures to try to provide plaintiffs with a nonjudicial remedy. And that's what we believe that we did in this case. If they thought that that didn't go far enough or that was insufficient, that's just a different case, Your Honor. And that's towards different policies and just a completely different context. But that's not what we did here. And, in fact, the district court in this case, Your Honor, well before the summary judgment motion was even filed, at JA270 to 271, we specifically alerted the plaintiffs and the district court that we were taking these substantial corrective measures. In our response to summary judgment, we reiterated and even referenced JA270 to 271 and said, we're still taking those measures. And because we had no objection to the summary judgment and we said we were taking these measures, they went ahead and moved forward and asked for summary judgment. The district court at JA1209 decided to actually grant summary judgment, even though it did recognize that we were undertaking these substantial revisions to the parole process. Completely different situation. So the district court decided not to tell plaintiffs, hey, these old policies that you were challenging in the operative complaint no longer exist. You have these new policies, a completely different landscape. They've taken good faith corrective measures. Instead of letting them just amend their complaint, I don't believe they even asked for it. And, frankly, the request that we made during summary judgment to stay the proceedings for a modest 30 days, that was also something that the plaintiffs consented to at JA1204, that they were okay with staying this litigation while we were taking those measures. But, again, the district court decided to go forward, grant summary judgment, and hold a two-day evidentiary hearing with multiple witnesses and multiple evidence. Again, we made our objections to preserve our objections on the record, but we believe that that was just totally unnecessary and insufficient because we believed, in our view, based on the authorities, that we had given them a non-judicial remedy that gave them the relief they were asking for. They're not asking for damages in this case. It was purely declaratory and injunctive relief. We believe that our new policies gave them that. And, frankly, if you look at the evidentiary hearing transcripts, the district court, and the remedy order for that matter, too, at AD58, the district court also found that many of these policies, again, in fact, satisfied due process. Morrissey and Gagnon are talking about minimum due process requirements. Notice the opportunity to be heard, the evidence presented against you, basically constitutional protections to make sure that this conditional liberty that you're afforded in parole, the revocation of parole, that is, is done in a constitutionally fair manner. And anything that goes beyond, again, the states have a lot of deference in this context with respect to running their correctional facilities, and certainly Justice Thomas and Louis V. Casey in his concurring opinion recognized that as well. We have substantial discretion. We took those measures. Anything that basically converts this into a substantial burden on the state to carry out its parole processes is something that Gagnon and Morrissey did not sanction. And so we believe that we did, in fact, implement good faith corrective measures that provided the minimum due process requirements under Morrissey and Gagnon. And we believe at that point the district court should not have gone forward with an evidentiary hearing and provided a 55-page, in our view, basically writing a code of procedure for the State of Missouri. Counsel, I'd like to ask you about another aspect of your argument. Sure. If you are correct that the district court's order directs the department to do things that only the Public Defender's Commission has authority to do, what is the proper remedy? Is it to narrow the scope of the injunction? Is it to dismiss the claim regarding provision of counsel? Or is it to dismiss the case? In our view, Your Honor, and we did brief this extensively in our opening brief and certainly again in our reply brief, in our view, as we read the Ranger case from this court, and that's cited in footnote 10 of our brief, we read the Ranger case to say if there was no opportunity at the district court level, the parties never gave the district court an opportunity to actually join the necessary and indispensable party to ensure complete relief in the case, then the remedy is usually a remand with instructions back to the district court to join that party, and then that would create effective relief. In our view, because we gave three different opportunities to the district court in this case before final judgment to join the public defender's office on numerous occasions, recognize that it had the authority at page 42 of the oral argument transcript on the motion to dismiss, and still did not do so, we believe under Ranger, because this was a necessary party to afford complete relief and an indispensable party for all the reasons that we highlight in the Pimentel decision, the four factors, a dismissal without prejudice would be appropriate here, at least a remand with instructions to dismiss without prejudice would be appropriate here because the public defender is in fact a necessary and indispensable party in our view, and the district court had at least three opportunities that I can think of right away before final judgment to join the public defender and did not. So as I read the Ranger case in footnote 10 of our brief, that is appropriate in this case, and I would readily concede if those opportunities were not presented to the district court at the time, I would tell you that absolutely, just remand it back and join the public defender and we don't have to have a redo, but because that relief was so necessary, and again, this was a big aspect in the operative complaint, the appointment of counsel is one of the, in their view, one of the gravest constitutional violations or alleged constitutional violations. If that's the case and we're telling them and the director of the public defender testifies at the evidentiary hearing that they're the entity that has multiple provisions in 600.42 of the Missouri Code to provide counsel in many situations and yet they're not a party, we believe under Ranger and those other decisions we've said in our brief, Your Honor, dismissal without prejudice is appropriate in this case. I'll go back to my three reasons. So the first, as I said, this remedy was unnecessary based on the posture of this case and the non-judicial remedy that we had offered the plaintiffs in this case. The second argument I would make, Your Honors, is even if a judicial remedy was warranted, again, the district court's judgment in this case was not. Its remedy exceeds the minimum due process requirements established in Gagnon-Morrissey, substantially burden the state's parole system. I mean, essentially their injunction, and plaintiffs concede this in their brief, at pages 37 and 52 of their brief, that we are enjoined from having any parole revocation hearings, statutorily required parole revocation hearings, until we craft and implement a policy to appoint counsel. Again, a directive that we have no authority whatsoever to implement. And I think it is quite telling, and this is something that the court can take judicial notice of, but this past legislative session at the Missouri legislature and for this upcoming fiscal year, they were appropriated millions of dollars for hiring new additional attorneys just for these parole hearings, Your Honor. And that was in their budget request from earlier this year. It was in legislation, again, that was just appropriated this past summer. And again, the statutes that govern their authority over appointing counsel, again, at 600.42 of the Missouri revised statutes, they can provide counsel, private counsel, when they have workload issues. They can provide counsel in many other contexts on a case-by-case basis. They provide counsel when the Constitution requires it. They provide counsel when liberty is at stake, conditional or otherwise. Counsel, did the record show that up until this case that they had never appointed counsel when requested by MDOC, or am I misremembering the record? In other words, there were requests or recommendations sent, but counsel were never appointed. Is that accurate? My understanding of the record, Your Honor, and I'm not so sure about the practices that basically the operative complaint is based on. What I can tell you is what is in the record is there was a screening instrument developed by the Department of Corrections to determine whether someone, there was a need for counsel. Again, the court in Gagnon tells us that not all of these, the court rejected an inflexible categorical rule for counsel in every case that has a parole revocation hearing. But the record, as I recall, Your Honor, is there's a screening instrument that goes through whether or not there's a need for counsel. And then there's an application for counsel to be appointed. Which goes to MPDC, right? Correct, correct. And were any of those granted prior to the filing of this lawsuit? I don't recall at this time, Your Honor. I'd have to get back to you on that. And then I suppose you don't know if, and it's probably not in the record, if any were granted subsequent to the policy changes and the new appropriations. All I know is that the applications that are in the record that were in fact faxed over to the public defender, the public defender refused to appoint counsel in all of those cases. Again, our position is they did have the authority to appoint them because, among other things, when the Constitution requires counsel, as does Gagnon in this case, they're allowed to appoint counsel. Actually, they must appoint counsel, which is what the statute says. Thank you. Statutory directive. Your Honors, I see I'm getting into my rebuttal time here. So if the court has no other questions, I will address you on rebuttal. Very well. You may. Thank you, Your Honor.  Ms. Bryan, we'll hear from you. Thank you, Your Honor. In the district court, the state of Missouri conceded it was violating the due process rights of thousands of individuals every year. We've heard a lot about the right to counsel, but it wasn't just by failing to screen for and provide counsel where Gagnon required state-funded counsel. It was also failing to provide notice of alleged violations, failing to disclose evidence of those violations to parolees, failing to notify parolees of their rights in the revocation process, and failing to provide explanations for the parole board's decisions. In 2017, when this lawsuit was filed, over 6,000 people were incarcerated under an unconstitutional parole revocation process. During the one year to the date that this appeal has been pending, thousands more have been incarcerated through what the state has conceded is a constitutionally deficient parole revocation process. As Mr. Rossetti said, the state conceded liability in this case. The state consented certification of a class of about 15,000 people. And then the state had 20 months, over 20 months, to implement changes to its revocation process. After that point in time, the plaintiffs asked that the court set an evidentiary hearing to assess the lay of the land, given that the department had made some policy changes, so that the district court could tailor an appropriate remedy to cure the constitutional deficiencies that remain. Counsel, was there a joint request for 30 days extension? There was a delay in the hearing. My question basically is, the state's suggesting that basically the district court jumped the gun here, and that both parties were willing to reach a non-judicial settlement, but that the district court preempted that. What's your response to that? Well, I think if you look at the timeline of the case, the district court did anything but jump the gun. I mean, summary judgment was granted in February of 2019, and the remedial order wasn't entered until November of 2020. Now, it is true that the parties engaged in mediation in early 2019, and that the state, with the consent of the parolee class, asked for 30 days to pursue negotiation, and that accounts for a part of the delay. But at a certain point in time, the state was no longer willing to engage in those discussions, and that is part of what preempted the parolee class' motion for an emergency hearing on remedy, which was filed in late 2019, around shortly before the state filed its motion to dismiss Vermoont and Failure 2. So your friend has suggested that you got what you wanted by the revised policies that were implemented. I take it you disagree with that. Is it the policies you have a problem with, the new policies, or the implementation of those policies, or both? Both. And, yes, I strongly disagree with that. I mean, the state wants this court to look at what it says and not what it does, because the overwhelming evidence that was adduced at this evidentiary hearing shows that what it does, despite these changes in policy, is — there's an error on the screen. I'm not sure if Judge Kalten can still hear me. Should I pause? What was the question? I can hear you. Okay. There was an error on the screen. I just wanted to make sure that we weren't disconnected. No, I've heard everything you've said loud and clear, so you may proceed. Great. Thank you. So, as I said, the state wants this court to look at what it says and not what it does, because what it does, as adduced at the evidentiary hearing last summer, is, despite these changes in policy, continue to violate due process rights in a number of ways. Now, my friend, Mr. Rossetti, is correct that a violation of written policy without more does not amount to a constitutional violation. That's not what we're saying here. What we're talking about is the constitutional floor that the state has to get to. If it's going to operate a parole system and if it's going to deprive people of liberty and reincarcerate them for allegedly violating their parole, it has to do that in a way that honors the U.S. Constitution. It has to meet that constitutional floor. And there are a myriad of ways in which their policies either aren't properly implemented and so fail to meet that floor, or there are holes in those policies, and because of those holes, they don't meet that constitutional floor. Counsel, even accepting all of the findings and conclusions of the district court, doesn't the remedy have to comport with the legal requirements and to be within the Supreme Court's parameters for the remedy? It's true, Your Honor, that, well, first I want to point out that in reviewing the scope of the remedy that the district court implemented, we're reviewing for abuse of discretion. And as Judge Cove's question highlighted earlier, the court's remedial order is predicated on facts which are reviewed for clear error, which means more than just maybe or probably, right? As this court said, it must strike us as wrong with the force of a five-week-old unrefrigerated dead fish. It just can't be said to be the case here. Although an error in interpreting Missouri law would be an abuse of discretion, wouldn't it? It would be if that were the case here. But certainly, when examining the scope of the remedy, you have to look at what due process is required. Due process requires, excuse me, keeping in mind that due process is flexible and calls for such protections as the circumstances demand. But what the district court couldn't do was turn a blind eye to the constitutional violations that were proven to persist after the Department of Corrections made multiple changes to its policies and procedures, most of which actually were implemented after summary judgment was granted without opposition from the state in this case. Counsel, when the department presented the opportunity to join the Public Defenders Commission as a party, did the plaintiff oppose or support that effort? Well, they actually never filed a motion to join, Your Honor. They did file a motion to dismiss for failure to join an indispensable party, and that motion was filed over 800 days after the lawsuit was filed and almost a year after judgment was granted to the Parolee class. And the Parolee class did oppose that motion because it's our position that the Public Defender Commission is not a necessary party to this action for the reasons delineated both in our opposition to that motion and also in our brief on appeal. Could you elaborate on that, Ms. Bryan? Is it your view that although the Public Defender Commission may appoint counsel when it's required by the Constitution, that the Parole Commission could do so as well under its authorities under state law? Or is this a question of the federal law overriding state law and dictating that the state do something to comply with the Constitution that the state law doesn't otherwise allow for? I think the former framing is a good nutshell of the argument, Judge Colleton. I know, Judge Coates, you asked whether the Public Defender had ever previously provided representation to parolees. They did at some point provide representation to parolees until in 2013 there was a change to the statute which gives the authority to the commission to provide representation to certain qualifying indigent defendants in the state of Missouri. And the change that was made in 2013 was removal of the language that expressly referenced representing individuals in parole and probation proceedings. Counsel, the statute still contained language requiring counsel to be provided when the Constitution requires. Isn't that the case? It's true that it contains that language even though it no longer contains the reference to parole revocation proceedings or probation proceedings. But that omission of that language is not the only clue as to what the legislature's intent was in 2013. The statute 600-042.4, which sets forth the types of cases in which the Public Defender provides representation, does not include the phrase exclusive authority. And this goes to, Judge Colton, to your question. There are numerous other provisions of Missouri statute where the legislature did use the phrase exclusive authority to indicate when that state agency and no other agency had the authority to act. For example, the City Counselor in 56640, Public Service Commission, the Board of Trustees of a Firefighter's Retirement System. This court made clear in Chase-Spank v. Johnson that where the legislature has the ability to include qualifying language but chooses not to do so, that we should infer that that omission was deliberate and evidences a different legislative intent. Indeed, even the Massey case that's cited by the State in their brief supports our argument on this way, which is we have to interpret the statute to mean what it says and assume that the legislature knew what it was doing when it was drafting that. Well, counsel, is there some other statute that gives the department authority to provide counsel? There is. So Missouri provides statute 217035, gives the Department of Corrections authority to contract for services. They do this, for example, in the context of providing medical care to people who are incarcerated. The Department of Corrections has a constitutional obligation to provide medical care to people in its custody. What are the other authorizations in that section? I mean, contract, is it contract for services? Is that the language? But there's a list in there, I think. Could you remind me of what the other authorizations are in there? Because it seems like hiring lawyers doesn't quite fit in with the others in that particular statute. Your Honor, I apologize. I don't have the statute in front of me. But I do know that the specific language that I'm referring to is contractual services. Okay. That's fine. And so, really, at the end of the day, it's the State's responsibility to provide counsel and figure out how to do that. And the district court actually gave the State some wide latitude in figuring this out. The district court judge didn't say, Department of Corrections, you have to contract the private attorneys to represent eligible parolees, although they could have done that. And, in fact, the State of Illinois, as testified to by our expert witness at the evidentiary hearing, handles representation in that way, where it's actually the parole board who retains private counsel for eligible parolees. But the district court didn't say that. It essentially said, figure it out, get it done. As Mr. Rossetti said a few minutes ago, they did figure that out. They did get that done. The public defender has changed its position, which it had previously made very clear, to the Department of Corrections and is now providing representation at parole hearings. But let's say the public defender says, oh, well, we don't have enough money to do this. The legislature won't fund it. Isn't the burden now on the Department of Corrections then to make it happen because they're responsible for complying with the Constitution and they can't say, well, there isn't enough money in the Defender Commission? It is. At the end of the day, since it's the Department of Corrections who is charged with administering the parole system, it is responsible for ensuring that it complies with due process. And, again, I want to highlight that right to counsel, it is important. Of course it's important. And there are a number of people who were revoked and qualified for counsel and didn't have the aid of counsel. But it is but one part of a much larger puzzle here. And the State does not contest and cannot contest that it's not providing notice or disclosing evidence or providing written explanations for its decisions. So, I mean, what's the problem if we were simply to remand with instructions to join the public defenders? I mean, in your view, what's the downside to that? Well, in fact, in our response to the motion… Well, they've got the money, right? You might as well get them on the hook. That's the first time I've ever heard anyone say that the Public Defender Commission has the money. Well, in this case, they've got more than the Department of Corrections. It's true that they were appropriated additional funds to create a violator unit this fiscal year. And my understanding is that they're providing representation. And my understanding is you agree that remedy number nine, which is the 30-day hearing, you agree that that's an abuse of discretion. Did I misread your brief on that? Or, in other words, we'd have to vacate at least part of the injunction anyway, and you agree with that? We agree that in that one respect the Court overstepped its bounds. So if it's going back anyway, wouldn't the district court just have to add the public defenders? I mean, I'm sure there are more procedural requirements that would happen. But then you'd have the appropriated funds subject to a Federal court injunction. Well, two things to say to that. I mean, first is the public defender is not necessary. And we actually have the benefit of hindsight to see that, and that the district court was able to accord complete relief among the existing parties, which is a separate question as to whether the public defender might have an interest in the litigation, which they didn't, and they said that. But I want to highlight the second point, which is that if this court is inclined to find that the public defender is necessary and indispensable, then it could remand just on that one question without throwing out the baby did the bathwater, which is what the State asked this court to do. They asked the court to dismiss a class action that implicates the rights of over 10,000 people. It's been litigated for years where they conceded liability because of one part of a broader but appropriate remedial order, which is just not necessary. I know you want to just talk about counsel, but I have one more question on it, if you wouldn't mind. Do you think that as the order is written now, that the State can comply with it by having the Corrections Department work with the public defender to provide lawyers, even without the commission being a party, and that would comply with the injunction? I do. So as I said, the district court in the State argues that it was overly specific and micromanaging in a number of ways, and this perhaps is an exception to that in their view, which is it could have said, DOC, hire attorneys, make sure that they're there, because there was evidence that that's possible to do at the evidentiary hearing, but it didn't. It said adopt and implement a policy for appointment of State-funded counsel to eligible parolees. That's at page 54 of the addendum. And contrary to my friend's interpretation of the order, it didn't say don't do any hearings until you do that. It said don't proceed with hearings for people who are eligible for counsel if they don't have an attorney with them. So, again, the State is arguing against a misconstrued version of this order. It was up to the State as to how to get attorneys in the room when they needed to be in the room. State, you figure it out, and the State figured it out. It could have done that by contracting with private attorneys under 217.035. It chose not to do that. Instead, it worked with the Public Defender's Office, and the Public Defender's Office got additional appropriated funds to provide representation. Now, if that changes in the future, the State still has the authority to contract for private attorneys and go about it that way. But it's true that in this regard, the district court gave the State wiggle room, discretion, to implement a policy to get attorneys in the room when they needed to be in the room. I also just want to address the State's argument that it made good faith policy changes, and it doesn't need to do anything more. I mean, this essentially eliminates any remedial power that the district court might have. And it's true that there are interests of federalism at play here, certainly. But, again, the district court can't turn a blind eye to overwhelming evidence of persistence to process violations solely for the sake of federalism. The Supreme Court in Brown v. Plata said very clearly, quote, courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration. Lewis v. Casey, in talking about the appropriate way to craft a remedy when having found a constitutional violation, suggests that States get the first opportunity to correct errors in the administration of their prison systems. The State got that here. It got over 20 months to cure the violations. But, as this court affirmed in the Ferguson-Florescent case, if the defendant responds to that opportunity with a legally unacceptable remedy, the court must fashion its own remedy or adopt a remedial plan proposed by the plaintiffs. And once a right in violation has been shown, the scope of a district court's equitable powers to remedy past wrongs is broad. For breadth and flexibility are inherent in equitable remedies. The district court properly exercises discretion in crafting a remedy. It could have entered a remedy in February of 2019. Instead, it had a hearing to consider evidence, hear evidence on how the policies had changed and what was going on at that moment in time so it could narrowly tailor the order to just address those constitutional deficiencies that persist. I only have a couple minutes left. We've talked a lot about procedure and statutory interpretation, and rightfully so today. But with the last couple minutes here, I want to emphasize that what this case is about at its core is fundamental fairness and liberty. In Morrissey, the court said that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty, and its termination inflicts a grievous loss on the parolee and often others. Darius Hunt, who testified at the evidentiary hearing, wasn't there for his baby's birth because he was incarcerated on an alleged parole violation. Oscar Glover wasn't able to care for his ailing mother because he was incarcerated on an alleged parole violation. Damien Binion lost his business, his livelihood, with his wife because he was incarcerated on an alleged parole violation. Stephanie Gasta, the lead plaintiff in this case, she gave birth to her son while she was incarcerated on an alleged parole violation because her parole officer told her, if you waive your hearing, you might get out and not have to do baby behind bars. She ended up having to do that anyway. The state must comply with due process in practice, not just on paper, before it inflicts grievous losses on thousands of others, just as it did for Stephanie Gasta, Mildred Curran, Kenneth Hemphill, Jesse Neely, Amber Weiss, Timothy Gallagher, Solomon Warren, Oscar Glover, Charles Braxton, Damien Binion, Amy Campbell, Darius Hunt, and countless others. We ask that the district court's orders be affirmed. Thank you so much for your time. All right, thank you for your argument. All right, we'll hear a rebuttal now. Judge Kobes, I would like to actually address a question that you had about Ms. Friend's citation to MoRevStat Section 217.035, subsection 4, which provides that the director of the Department of Juvenile Justice, the director of corrections, has the authority to, quote, procure supplies, material, equipment, or contractual services for the department in each of its divisions. As we pointed out in our brief, there's been a lot of discussion about the Alabama Realtors case recently from the Supreme Court and certainly the Fifth Circuit's decision last week in the OSHA mandate lawsuit. The words that are used in a statute, especially when it comes to a list, they're given the meaning with the company that it keeps. And any kind of authority for the commission, for the Department of Corrections in this case, to hire counsel, there's just simply no reference whatsoever, no explicit statutory authority in Chapter 217 for that. Now, interestingly enough, with respect to hiring private attorneys and legal services, the Missouri Public Defender, and we cite this in our brief at page 29, Section 600, and this is in the reply to page 29, but 600.042.1, subsection 10, provides that the public defender shall contract for legal services with private attorneys. And this is made on a case-by-case basis. It's the statute I was alluding to earlier. I want to just provide the full citation to the text of that statute in particular. The legislature in Missouri decided to have an explicit provision about providing legal services to individuals when the Constitution requires it on the public defender, and it didn't do so with respect to the Director of Corrections at the Department of Corrections. So I wanted to address that first question, Your Honor. Secondly, this—yes, Your Honor. Before you go on there, does the district court require the Department of Corrections to hire counsel? What's the objection to the order? Well, Your Honor, the—if you go back to addendum at page 58, the district court is asking us to craft and implement a policy that provides for state-funded—an appointment of counsel. And the record in this case, Your Honor, we've developed a screening instrument that goes through when we think the Department of Corrections thinks that an attorney is necessary based on either they're under abusive substances, they are not proficient in English, they are incompetent to proceed, those kind of screening questions that can be done and that were contemplated in Gagnon and Morrissey. But in terms of us, when we do establish that there is a need for counsel in one of these parole revocation hearings, we have consistently sent those applications over to the public defender's office and they've decided not to provide counsel in those situations. I mean, to this—to Judge Kovas' question, I have not found a single instance in the record where we sent this application on to the public defender's office and they chose— and they have actually chosen to appoint counsel even though the statute is very clear that it is, in fact, a statutory directive. They shall appoint counsel when the Constitution requires it, among other concepts. Look, due process—and I agree with Ms. Bryan—due process is flexible. But so, too, is the discretion that the states get when they administer their parole systems. And in this case, Missouri—I mean, sure, Wisconsin and some other states have decided to make the parole authority both the entity that determines the need for counsel and also gives them the authority to actually appoint counsel, and they have discretion in that case. But Missouri decided to have the commission be the one who ultimately appoints counsel. They are the only ones under state law who have the authority to do that. And the Department of Corrections does not. And again, they just got—I mean, their last appropriation, I think it was $48 million total. I'm not sure all of that was just for these attorneys. But certainly, they are—they understand that they do have a role in this context to appoint counsel. So just to be clear on the facts, they have the appropriated funds, but they continue to refuse to appoint counsel? So this actual remedy order, Your Honor, has been stayed ever since it was issued back in November. I'm not aware of anything on the record today, for example, or post-remedy order, Your Honor, back in November, where the applications were forwarded to the public defender and they denied representation. I mean, that would be a little odd now that they do have the money and they do have— again, they've always had the authority to appoint counsel, and that seems to be their position, and they created a whole new division just for that. I'm just not sure what the state of the affairs is today. But what I can say is that when—before the remedy order was actually entered— and again, going back to, I think, your question about, you know, what is the appropriate remedy. Yes, Your Honor. Well, what I'm trying to understand, you seem to— a theme of your argument is the district court is doing too much micromanaging. But I sort of hear you saying now the district court needs to bring all the different relevant state agencies before the court and parcel out the responsibility among the state agencies to comply with the Constitution. What's wrong with just ordering your department to comply with the Constitution and then let you figure it out? And if you can't get the public defender to hire the lawyers, then it's your responsibility to hire the lawyers. Well, Your Honor, I just—maybe I'm saying I'm out of time, but I'll address your question. As I read Gagnon, Your Honor, with all due respect, it's talking about the need for counsel itself, which is what the commission—excuse me, the Department of Corrections has done in this case to develop a screening instrument to determine whether or not someone can proceed in what's really a summary proceeding, whether they need counsel. They rejected an inflexible rule. The department decided that we will determine when we see this individual, when we interview this individual, whether or not they are incompetent to proceed, they can represent themselves, they can speak the English language. That is what Gagnon is talking about. Anything beyond that in terms of the authority to actually appoint counsel, that was not addressed in Gagnon, Your Honor. At least that's our view in terms of screening versus appointment. I think Gagnon left it open, again, with respect to the state's discretion to appoint counsel because due process is flexible. That is exactly what Missouri has done in this case, Your Honor. So run that by me. I mean, all that's required is screening. The State can determine, yes, the Constitution and due process require counsel in this case, but the State need not actually appoint counsel? Well, if in fact Missouri had an ability to appoint counsel, we would do so, but we just do not, because under State law that is relegated to a different agency. That we have multiple, for multiple occasions in this litigation before the remedy was actually entered, we said they are a necessary and indispensable party to have complete relief in this case. And, again, those opportunities were rejected multiple times, Your Honor. If there are no further questions, I will ask the Court to reverse the district court's judgment. Very well. Thank you. Thank you to both counsel. The case is submitted. The Court will file a decision in due course.